**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RESTAURANT TECHNOLOGIES, INC., | : | CIVIL ACTION NO. 06-5202 (MLC) |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : | **FILED: AUGUST 15, 2008** |
| v. | : |  |
| VINCENT ALLORA, | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

**APPEARANCES**

Dorsey & Whitney LLP (Peter M. Lancaster, of counsel),
Minneapolis, Minnesota, and Sterns & Weinroth, PC
(Karen A. Confoy and Erica S. Helms, of counsel), Trenton,
New Jersey, for Plaintiff

Keith A. McKenna & Associates, LLC (Keith A. McKenna, of
counsel), Montclair, New Jersey, for Defendant

**INTRODUCTION**

Plaintiff, Restaurant Technologies, Inc. ("RTI"), alleges
claims of (1) breach of contract, (2) misappropriation of trade
secrets, and (3) unfair competition against defendant, Vincent
Allora ("Allora"). (Dkt. entry no. 1, Compl.) RTI also alleges
that it is entitled to a constructive trust "on proceeds [Allora]
has obtained through his wrongful acts." (Id.) RTI now moves
for summary judgment in its favor pursuant to Federal Rule of
Civil Procedure ("Rule") 56(c) as to (1) the claims of (a) breach

of contract, and (b) unfair competition, and (2) its entitlement
to a constructive trust.  (Dkt. entry no. 26.)  Allora opposes
the motion.  (Dkt. entry no. 30.)  The Court determines this
motion on briefs without an oral hearing, pursuant to Rule 78(b).
For the reasons stated herein, the Court will deny the motion.

**BACKGROUND**

RTI employed Allora from approximately December 1999 until
February 2004 in a sales and marketing position.  (Dkt. entry no.
26, RTI Stmt. of Material Facts ("RTI Facts"), at ¶ 1.)  In
December 1999, Allora signed a document entitled "Receipt and
Acknowledgment of RTI Employee Manual".  (Id. at ¶ 2; see dkt.
entry no. 7, Decl. of Peter M. Lancaster ("Lancaster Decl."), Ex.
B, Receipt and Acknowledgment of RTI Employee Manual ("Manual
Receipt").)  This document states that, inter alia,

> I am aware that during the course of my employment
> confidential information will be made available to me,
> for instance, product designs, marketing strategies,
> customer lists, pricing policies and other related
> information.  I understand that this information is
> proprietary and critical to the success of RTI and must
> not be given out or used outside of RTI's premises or
> with non-RTI employees.  In the event of termination of
> employment, whether voluntary or involuntary, I hereby
> agree not to utilize or exploit this information with
> any other individual or company.

(Manual Receipt.)

The RTI Employee Manual further provides that, inter alia,
"[e]mployees may not take an outside job, either for pay or as a

2

donation of her/his personal time, with a customer or competitor of RTI; nor may they do work on their own if it competes in any way with the sales of products or services we provide our customers." (Dkt. entry no. 26, Certification of Meghan J. Ryan ("Ryan Cert."), Ex. I, RTI Employee Manual.)

Allora also signed a non-competition agreement with RTI in December 1999 ("1999 Non-Competition Agreement"). (RTI Facts, at ¶ 3; see Lancaster Decl., Ex. A, 1999 Non-Competition Agreement.) The 1999 Non-Competition Agreement provided that, inter alia, Allora would not compete with RTI for six months after termination of his employment with RTI. (Lancaster Decl., Ex. A, 1999 Non-Competition Agreement.)

Allora also signed an "Employee Agreement/Employment Separation" form in January 2004 ("2004 Employee Agreement/ Employment Separation Form"), acknowledging, inter alia, his agreement not to use or disclose any confidential information he acquired while employed by RTI. (Id., Ex. D, 2004 Employee Agreement/Employment Separation.) Allora thereafter left his employment with plaintiff and began working for Oilmatic Systems, LLC ("Oilmatic"). (Dkt. entry no. 26, RTI Br., at 3; dkt. entry no. 30, Allora Br., at 15.)

Allora subsequently brought an action in state court against Oilmatic and Michael Allora in November 2005, alleging various state law claims related to Michael Allora's management of

Oilmatic (the "State Action").  (RTI Br., at 6; Lancaster Decl.,
Ex. E, <u>Allora, et al. v. Allora, et al.</u>, No. C-363-05 (the "State
Action"), Revised Am. Compl.)  This action was settled in May
2006.  (Ryan Cert., Ex. J, Settlement Agreement.)  One of the
terms of the settlement agreement provides that, <u>inter alia</u>,
Oilmatic will purchase Allora's membership interests in Oilmatic
after "entry of a final judgment . . . or the conclusion of a
settlement of" two actions in this Court, <u>Restaurant
Technologies, Inc. v. Jersey Shore Chicken</u>, Civil Action No. 05-
5356, and <u>Oilmatic Systems, LLC v. Restaurant Technologies Inc.</u>,
Civil Action No. 06-363 (the "Federal Actions"), and upon
fulfillment of certain conditions.  (<u>Id.</u>)[1]

RTI brought this action in October 2006, alleging claims of
(1) breach of contract, (2) misappropriation of trade secrets,
and (3) unfair competition.  (Compl.)  RTI also alleges that it
is entitled to a constructive trust on "on proceeds [Allora] has
obtained through his wrongful acts."  (<u>Id.</u>)  RTI previously moved
for summary judgment in its favor as to the claims of (a) breach
of contract, and (b) unfair competition.  (<u>See</u> dkt. entry no. 7.)
The Court denied the motion without prejudice as premature, as
discovery was ongoing.  (Dkt. entry no. 19, 8-17-07 Order.)  RTI
now moves for summary judgment in its favor as to (1) the claims
of (a) breach of contract, and (b) unfair competition, and (2)

_____

[1]  Michael Allora is Allora's uncle.  (RTI Br., at 1.)

its entitlement to a constructive trust.   (Dkt. entry no. 26.)
Allora opposes the motion.   (Dkt. entry no. 30.)

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper if the
pleadings, the discovery and disclosure materials, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law.   Id.   The summary judgment movant bears the initial burden
of showing that there is no genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Once the
movant has met this prima facie burden, the non-movant must set
out specific facts showing that there is a genuine issue for
trial.   Fed.R.Civ.P. 56(e)(2).   A non-movant must present actual
evidence that raises a genuine issue of material fact and may not
rely on mere allegations.   Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).   At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial."   Anderson, 477 U.S. at 249.   Under this standard, the

"mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

RTI is the party moving for summary judgment on certain claims here. A party with the ultimate burden of proof at trial, such as RTI, must satisfy a stringent standard to obtain summary judgment. Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992). Under such a stringent standard, a district court "must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). "If the motion

does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Foster v. Morris, 208 Fed.Appx. 174, 179 (3d Cir. 2006) (quotation and citation omitted).

## II. Unfair Competition Claim

"New Jersey's law of unfair competition is an amorphous area of jurisprudence . . . it is impossible to categorize all acts which constitute unfair competition". Duffy v. Charles Schwab & Co., Inc., 97 F.Supp.2d 592, 600 (D.N.J. 2000) (quotation and citation omitted). However, "[g]enerally it consists of the misappropriation of one's property by another . . . [t]he misappropriation usually takes the form of 'palming off' another's goods as your own, although the modus operandi is not essential." Id. at 600-01 (citation omitted). Further, "a prima facie case of unfair competition . . . requires evidence of bad faith or malicious conduct." Wellness Publishing v. Barefoot, No. 02-3773, 2008 WL 108889, at *20 (D.N.J. Jan. 9, 2008) (quotation and citation omitted); Samsung Am. Inc. v. Park, No. BER-C-379-06, 2006 WL 3627072, at *17 (N.J. App.Div. Dec. 11, 2006).

### A. Breach of Duty of Loyalty

RTI states that "[a]n employee is liable for unfair competition when he breaches his duty of loyalty to his employer by competing with the employer while still employed" under both

New Jersey and Minnesota law.  (RTI Br., at 8.)  RTI is correct
in that it appears that Minnesota does recognize that an
employee's breach of the duty of loyalty to an employer may
constitute unfair competition.  See Rehab. Specialists, Inc. v.
Koering, 404 N.W.2d 301, 306 (Minn.App. 1987).

Whether this is true under New Jersey law, however, is
unclear.  RTI cites to Lamorte Burns & Co., Inc. v. Walters, 167
N.J. 285 (2001), to support its contention that New Jersey law
recognizes that an employee's breach of the duty of loyalty to an
employer can constitute unfair competition.  (RTI Br., at 8.)
However, that court held that because the employer was entitled
to summary judgment as to claims of (1) tortious interference
with economic advantage, and (2) breach of the duty of loyalty,
it was also entitled to summary judgment as to claims of (1)
misappropriation of confidential and proprietary information, and
(2) unfair competition.  Lamorte Burns & Co., Inc., 167 N.J. at
309.  Thus, the employees had engaged in other wrongful conduct
that supported the holding that they were also liable for unfair
competition, in addition to breaching their duty of loyalty to
their employer.  Id.[2]

_____

[2] Specifically, to prove a claim of tortious interference
with economic advantage, a "plaintiff must show that it had a
reasonable expectation of economic advantage that was lost as a
direct result of [a] defendant['s] malicious interference, and
that it suffered losses thereby."  Lamorte Burns & Co., Inc., 167
N.J. at 305-06.

The Court further notes that courts within this District
have disagreed as to whether a common law unfair competition
claim extends beyond claims involving misappropriation of
another's property or information.  See, e.g., Wellness
Publishing, 2008 WL 108889, at *21 (granting Rule 12(b)(6) motion
to dismiss as to common law unfair competition claim because
claim based on false advertising, not misappropriation); Telmark
Packaging Corp., Inc. v. Nutro Labs. & Nature's Bounty, No. 05-
3049, 2008 WL 43954, at *6 (D.N.J. Jan. 2, 2008) (citing Lamorte
Burns & Co, Inc., and noting that case "suggested that this tort
exists primarily to ensure that parties to an agency
relationship, specifically former employees, cannot
misappropriate either 'trade secrets' or even less critical and
more broadly defined 'confidential information' that is the
property of the employer") (citation omitted); Warner Lambert Co.
v. Purepac Pharm. Co., Nos. 98-2749, 99-5948, & 00-2053, 2000 WL
34213890, at *10-*11 (denying motion for summary judgment on
common law unfair competition claim, and holding that (1) common
law unfair competition not limited to "passing off" and
"unprivileged imitation", and (2) allegation of fraudulent
submission to government agency could fall within scope of unfair
competition claim); Eli Lilly & Co. v. Roussel Corp., 23
F.Supp.2d 460, 495 (D.N.J. 1998) (granting Rule 12(b)(6) motion
to dismiss common law unfair competition claim because plaintiff

failed to assert "a claim of passing off or unprivileged imitation"). This Court also has previously noted that the case law analyzing this type of claim did not "place rigid limitations upon the type of conduct proscribed under New Jersey's unfair competition law." See Duffy, 97 F.Supp.2d at 601 n.8.

Even if the Court assumes that a breach of the employee's duty of loyalty can constitute unfair competition, genuine issues of material fact as to whether Allora breached that duty exist here. An employee has a duty of loyalty to not act contrary to the employer's interest while employed. Lamorte Burns & Co., Inc., 167 N.J. at 302. However, the scope of the duty of loyalty "may vary with the nature of [the employer-employee] relationship." Cameco, Inc. v. Gedicke, 157 N.J. 504, 516 (1999). Factors that may be relevant to the scope of this duty include (1) whether the employee occupies a position of "trust and confidence", as opposed to one where the employee is "performing low-level tasks", and (2) the egregiousness of the employee's conduct. Id. at 516-17. Further, because "[t]he contexts giving rise to claims of employee disloyalty are so varied", the Court must utilize a "flexible, fact-sensitive approach" to such a claim. Id.; Gregory D'Alessandro Enters., Inc. v. Universal Mktg. Group, LLC, No. A-0951-06T1, 2008 WL 794468, at *4 (N.J. App.Div. Mar. 27, 2008).

10

"Assisting an employer's competitor can constitute a breach of the employee's duty of loyalty." Cameco, Inc., 157 N.J. at 516.  However, whether such assistance constitutes a breach of the duty of loyalty "depends on the facts of each case." Id. at 517.  "In some cases, the assistance may be so unintended or inconsequential that it will not result in a breach of the employee's duty of loyalty." Id.  Further, whether the employee provides assistance to a "direct" or "indirect or minimal" competitor is also relevant. Id.  "Thus, slight assistance to a direct competitor could constitute a breach of the employee's duty of loyalty.  When competition is indirect or minimal, however, the employer, to establish a breach, may be required to show that the employee rendered substantial assistance to the competitor." Id.

RTI contends that Allora engaged in unfair competition by breaching his duty of loyalty to RTI as an employee, when "[b]y [his] own admission, he provided Oilmatic - a competitor of RTI - with competitive assistance, including the design and development of Oilmatic's end-user system, distribution center, delivery vehicles, distributorship agreements, and sales strategies." (RTI Br., at 9.)  RTI supports this contention by pointing to (1) an allegation in the revised amended complaint filed in the State Action, and (2) Allora's deposition testimony taken in the Federal Actions pertaining to that allegation, as proof that

11

Allora provided competitive assistance to Oilmatic while he was
employed by RTI.  (Id.; see Lancaster Decl., Ex. C, 4-21-06 Tr.
of Dep. Test. of Allora ("4-21-06 Allora Dep. Test."), at 27-28;
Ex. E, State Action, Revised Am. Compl., at ¶ 9.)  That
allegation provides that "[f]rom January 2000 to January 2004,
Plaintiff Allora provided Defendant Allora and Oilmatic with all
of the operational direction for Oilmatic, including, but not
limited to, designing and developing the end user system, the
distribution center, delivery vehicles, distributorship
agreements, and sales strategies."  (Lancaster Decl., Ex. E,
State Action, Revised Am. Compl., at ¶ 9.)

    Allora responds that the factual basis for RTI's motion "is
not premised upon verified documents but rather upon an
exaggerated reading of a deposition taken of [Allora] as to what
he understood was meant by another's drafting of allegations in
an unverified [c]omplaint."  (Allora Br., at 4.)  Further, Allora
states that he "was not the lead plaintiff but rather, the claims
set forth in that actions were primarily asserted based upon
information and belief on behalf of the co-founder of Oilmatic,
Nicholas Olivieri."  (Dkt. entry no. 34, Allora Reply To RTI
Facts ("Allora Facts"), at ¶ 5.)  The certification of Allora
also provides that (1) the pleadings in the State Action were
drafted by counsel, (2) Allora "did not provide material
assistance to [counsel] in the drafting of [the pleadings]", and

(3) Allora "did not provide any input to [counsel] in the
creation of [paragraph nine of the revised amended complaint]."
(Dkt. entry no. 33, Certification of Vincent Allora ("Allora
Cert."), at ¶¶ 4-5, 9.)

Allora also relies on the certification of Michael Allora,
which states that, <u>inter</u> <u>alia</u>, "[Allora] did not provide me with
assistance in the operation, management, design, or strategies of
Oilmatic during the time he was employed at RTI."  (Dkt. entry
no. 32, Certification of Michael Allora ("Michael Allora Cert."),
at ¶ 6.)  It also states that the allegations set forth in the
State Action pleadings "were denied by myself and Oilmatic", and
that "[w]e were fully prepared to contest the allegations set
forth in [the pleadings], but later settled that matter."  (<u>Id.</u>
at ¶¶ 9-10.)

RTI replies that the Court should disregard Allora's
certification, as Allora is not entitled to defend this motion by
"creat[ing] fact issues by disputing prior deposition testimony"
and "contradicting prior admissions made under oath".  (RTI Br.,
at 7, dkt. entry no. 35, RTI Reply Br., at 5.)  RTI also contends
that the Court should disregard the certification of Michael
Allora, as "[t]he settlement agreement between the Alloras [in
the State Action] . . . evidences their mutual recognition that
defeating RTI provides mutual benefits.  Michael Allora had many
opportunities to disavow the actions of his nephew before

13

litigation made apparent that his self-interest supported the statement he now submits." (RTI Reply Br., at 7-8.)

While it is true that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict", the Third Circuit has "adopted a more flexible approach" to this rule, known as the "sham affidavit" doctrine. Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251, 254 (3d Cir. 2007) (quotation and citations omitted). Thus, the doctrine "has not been applied without regard for the surrounding circumstances." Baer v. Chase, 392 F.3d 609, 624 (3d Cir. 2004).

"[W]hen there is independent evidence in the record to bolster an otherwise questionable affidavit", or the affiant "offer[s] a satisfactory explanation for the conflict between the prior deposition and the affidavit", for example, the Court may refuse to disregard a contradictory affidavit. Jiminez, 503 F.3d at 254 (quotations and citations omitted). Therefore, disregarding a contradictory affidavit is appropriate on "clear and extreme facts; that is, when the affidavit is flatly contradictory to the prior testimony and offers no explanation for the change in position." Coleman v. Cerski, No. 04-1423, 2007 WL 2908266, at *5 (M.D. Pa. Oct. 4, 2007) (quotations and citations omitted); Ragan v. Fuentes, No. 05-2825, 2007 WL 2892948, at *10-*11 (D.N.J. Sept. 28, 2007) (denying motion for

14

summary judgment, and (1) declining to consider affidavit as a "sham", as Court could not say as a matter of law that affidavit was "flatly contradictory" to prior deposition testimony, and (2) noting that contradictions between prior deposition testimony and affidavit would be "more appropriately dealt with on cross-examination than on summary judgment").

The facts here are not so "clear and extreme" to warrant granting summary judgment in favor of RTI as to whether Allora breached his duty of loyalty to RTI by providing competitive assistance to Oilmatic, thus engaging in unfair competition. Even if Allora's certification could be read to be "flatly contradictory" to his earlier deposition testimony in the Federal Actions, Allora has presented independent evidence indicating that he did not provide Oilmatic with competitive assistance while employed by RTI.  (See Michael Allora Cert., at ¶¶ 6, 9-10.)  The Court need not disregard Michael Allora's certification simply because RTI believes his statements are not credible. Whether Michael Allora's certification is credible, and what Michael Allora's motivations are for submitting the certification, are factual issues not appropriate for determination on summary judgment.

There are other factual issues relevant to whether Allora breached his duty of loyalty not addressed by RTI, moreover.  As discussed supra, whether an employee has breached the duty of loyalty by providing competitive assistance is a factual question

15

depending on, <u>inter</u> <u>alia</u>, the nature of the employer-employee relationship, whether the assistance given was substantial, and whether the assistance was given to a direct or indirect competitor. <u>Cameco, Inc.</u>, 157 N.J. at 516-17.  Although RTI states that Allora was a "national account manager", it provides no other information about the nature of Allora's duties at RTI. (RTI Reply Br., at 8.)  Moreover, Allora argues that he was a "salesman", and "not management", indicating that his position at RTI was not a high-level position.  (Allora Br., at 7.)  This argument is consistent with Allora's deposition testimony in the Federal Actions, where Allora testified that he was not part of "RTI's management team" and was not an "executive" at RTI. (Lancaster Decl., Ex. C, Allora Dep. Test., at 68-69.)

Although RTI asserts that Oilmatic is its competitor, Allora has stated that RTI and Oilmatic were competitors only "after 2006".  (RTI Facts, at ¶ 7; Allora Facts, at ¶ 7.)  RTI points to Allora's deposition testimony in the Federal Actions in support of its assertion that Oilmatic is its competitor.  (RTI Facts, at ¶ 7; <u>see</u> Lancaster Decl., Ex. C, 4-21-06 Allora Dep. Test., at 67.)  However, it appears that during that portion of Allora's deposition testimony, Allora is discussing his employment at Oilmatic, not RTI.  (<u>See</u> Lancaster Decl., Ex. C, 4-21-06 Allora Dep. Test., at 65-67.)  Further, the deposition testimony of Brad Schoenbauer, a representative of RTI, states that "it would

16

appear that Oilmatic was able to more rapidly get into the market
with information that may have come from RTI." (Dkt. entry no.
31, Certification Keith A. McKenna ("McKenna Cert."), Ex. B, 11-
7-07 Tr. of Dep. Test. of Brad Schoenbauer ("11-7-07 Schoenbauer
Dep. Test."), at 83-84.) This testimony indicates that there is
a factual issue as to when exactly Oilmatic became a direct
competitor of RTI, and whether that occurred while Allora was
employed by RTI. (See id.)

Even if Allora did assist Oilmatic while employed by RTI,
moreover, RTI has offered no evidence as to whether Allora's
conduct was malicious, or done in bad faith, as required to
establish an unfair competition claim under New Jersey law, as
discussed supra. See Wellness Publishing, 2008 WL 108889, at
*20; Samsung Am. Inc., 2006 WL 3627072, at *17.

### B.   Misappropriation Or Improper Use Of Confidential Information

RTI also argues that there is no genuine issue of material
fact that Allora engaged in unfair competition by taking
"confidential information and improperly us[ing] that information
to compete with RTI both during and after his employment with
RTI." (RTI Br., at 9.)

Misappropriation of confidential information may constitute
unfair competition under New Jersey law, as noted supra. Telmark
Packaging Corp., Inc., 2008 WL 43954, at *6. Under New Jersey
law, "[i]nformation need not rise to the level of a trade secret

17

to be protected . . . and indeed, may otherwise be publicly available". Lamorte Burns & Co, Inc., 167 N.J. at 299. "The key to determining the misuse of information is the relationship of the parties at the time of disclosure and the intended use of the information." Id. "Inherent in the relationship of the parties are their expectations with respect to the information." Richards Mfg. Co. v. Thomas & Betts Corp., No. 01-4677, 2005 WL 2373413, at *6-*7 (D.N.J. Sept. 27, 2005) (noting that "the employer/employee relationship and circumstances under which the employee was exposed to the information" are relevant as to whether employer's information was legally protectible).

An employee "is not compelled to shut his eyes to what goes on in his place of employment, nor is he required to wipe his memory clear of those mat[t]ers which he learns during the course of that employment", however. Samsung Am. Inc., 2006 WL 3627072, at *15. Further, mere access to confidential information does not establish that an employee misappropriated or improperly used such information. See Palm Bay Imports, Inc. v. Miron, 55 Fed.Appx. 52, 57 (3d Cir. 2003) (affirming judgment of district court in favor of former employees as to claim of violation of duty of loyalty for unlawful disclosure of confidential information).

RTI is not entitled to summary judgment as to whether Allora misappropriated or improperly confidential information, thus

18

engaging in unfair competition.  RTI contends that Allora has
admitted that he provided RTI's confidential information to
Oilmatic, pointing to the allegations in the State Action and
Allora's deposition testimony in the Federal Actions to support
this claim.  (RTI Br., at 12; see Ex. C, 4-21-06 Allora Dep.
Test.; Ex. E, State Action, Revised Am. Compl.)

    It does not appear, however, that Allora "admits" anything
about providing Oilmatic with RTI's confidential information in
either those allegations or the deposition testimony; rather, the
allegations and deposition testimony discuss the work Allora
performed for Oilmatic.  (See Lancaster Decl., Ex. C, 4-21-06
Allora Dep. Test.; Ex. E, State Action, Revised Am. Compl.)
Indeed, in that deposition testimony, Allora denies providing
RTI's confidential information to Oilmatic.  (See Lancaster
Decl., Ex. C, 4-21-06 Allora Dep. Test, at 70.)

    RTI therefore infers that the work Allora performed for
Oilmatic necessarily indicates that he took confidential
information from RTI.  (See RTI Reply Br., at 9.)  Indeed, RTI
supports its claim that Allora "admits" he provided confidential
information to Oilmatic by arguing that "[Allora] could have
obtained the information that he has admitted he provided to
Oilmatic only from his work at RTI because, prior to working at
RTI, [Allora] had had no familiarity with the bulk cooking oil
distribution and waste removal industry."  (Id. at 9-10.)  RTI
also argues that because Allora "held a position at RTI that

19

would be expected to give him access to RTI's confidential information", Allora's conduct necessarily establishes that he provided such information to Oilmatic.  (RTI Reply Br., at 8.)

Mere access to confidential information is not sufficient to establish that Allora misappropriated or improperly used such information.  See Palm Bay Imports, Inc., 55 Fed.Appx. at 57. Moreover, even if the Court were to make an inference regarding Allora's position and his access to confidential information, RTI has not provided any evidence to the Court as to the duties of Allora's position at RTI, what type of confidential information he would be and was exposed to, and whether this information is of the type that RTI alleges he misappropriated or improperly used.  See Lamorte & Burns Co., Inc., 167 N.J. at 299; Richards Mfg. Co., 2005 WL 2373413, at *7 (noting that whether (1) information is created and stimulated by environment furnished by employer, and (2) employee has been exposed to and enriched by information solely due to employment is "probative" of whether information is protectible).

RTI also points to a letter from Allora to Michael Allora, where Allora writes that he is "very familiar with [RTI's] entire organization, their pricing protocols, their strategies, their customer base", and that he is "a shareholder in their company privileged to information about their financial status that nobody else at Oilmatic can claim."  (RTI Br., at 5; see

20

Lancaster Decl., Ex. F, 2-20-05 Letter.)  However, the mere fact
that Allora may have gained knowledge about RTI while employed
there does not establish that Allora misappropriated or
improperly used RTI's confidential information.  See Samsung Am.
Inc., 2006 WL 3627072, at *15.  Indeed, as noted supra, Allora
denies providing any of RTI's confidential information to
Oilmatic.  (See Lancaster Decl., Ex. C, Allora Dep. Test, at 70.)
Allora also has put forth evidence indicating that at least some
of the information alleged as confidential is publicly available.
(Allora Br., at 2; see McKenna Cert., Ex. A, Print Out of RTI's
Website.)

## III. Breach of Contract Claim

### A.   Legal Standards

To prove a breach of contract claim under New Jersey law,
RTI must prove that (1) a valid contract existed between it and
Allora, (2) Allora breached this contract, (3) RTI performed
under this contract, and (4) RTI was damaged as a result of
Allora's breach.  West v. IDT Corp., No. 01-4372, 2008 WL 762459,
at *3 (D.N.J. Mar. 19, 2008).[3]

### B.   Legal Standards Applied Here

RTI argues that it is entitled to summary judgment in its
favor as to its breach of contract claim because there is no

---

[3] Minnesota law requires substantially similar elements to
prove a breach of contract.  See Commercial Assocs., Inc. v. Work
Connection, Inc., 712 N.W.2d 772, 782 (Minn.App. 2006).

genuine issue of material fact that Allora breached the RTI Employee Manual by (1) discussing with Michael Allora the formation of Oilmatic to compete against RTI, and (2) providing "competitive assistance" to RTI from January 2000 through January 2004, as described supra.  (RTI Br., at 10-11.)  RTI also contends that Allora breached the Receipt and Acknowledgment of RTI Employee Manual by utilizing confidential information he acquired while employed at RTI during his employment at Oilmatic. (Id. at 11-12.)  Further, RTI argues that Allora breached the 1999 Non-Competition Agreement by working for Oilmatic, a competitor of RTI, directly after his employment with RTI terminated.  (Id. at 12-13.)  RTI further contends that Allora's alleged breach of contract has damaged RTI.  (Id. at 13.)

The Court finds that RTI is not entitled to summary judgment on its breach of contract claim, for the reasons discussed infra.

### 1.    RTI Employee Manual

The RTI Employee Manual prohibited Allora from (1) taking an "outside job . . . with a customer or competitor of RTI", and (2) doing "work on [his] own if it compete[d] in any way" with "the sales of products or services" RTI provided to its customers while Allora was employed by RTI. (Ryan Cert., Ex. I, RTI Employee Manual.)  It is unclear how, even if RTI's allegations are true, mere discussion of forming a competitor company constitutes either of these acts.  Further, as discussed supra,

22

Allora denies providing Oilmatic with assistance while he was employed with RTI, an assertion supported by Michael Allora's certification.  Also, there is a factual issue as to the status of Oilmatic as a competitor of RTI while Allora was employed at RTI, also discussed <u>supra</u>.

> **2.   Receipt and Acknowledgment of RTI Employee Manual, 2004 Employee Agreement/Employee Separation Form, & 1999 Non-Competition Agreement**

These agreements kept Allora from (1) using, disclosing, or exploiting confidential and proprietary information both during and after employment with RTI, and (2) competing with RTI for six months after termination of Allora's employment with RTI. (Lancaster Decl., Ex. A, 1999 Non-Competition Agreement; Ex. B, Manual Receipt; Ex. D, 2004 Employee Agreement/Employee Separation Form.)  As discussed <u>supra</u>, there are genuine issues of material fact as to whether (1) Allora misappropriated or improperly used confidential or proprietary information, and (2) Oilmatic was a competitor of RTI at the time Allora began his employment there, thus creating genuine issues of material fact as to whether Allora breached these agreements.  Thus, assuming <u>arguendo</u> that these restrictive covenants are enforceable under either New Jersey or Minnesota law, RTI is not entitled to summary judgment as to its claim of breach of these contracts.

**IV.   Constructive Trust**

Because the Court is denying RTI's motion for summary judgment as to its unfair competition and breach of contract claims, it cannot determine at this juncture whether RTI is entitled to a constructive trust on any proceeds obtained by Allora.  Thus, the Court will deny the part of RTI's motion for summary judgment as to this claim.

CONCLUSION

For the reasons stated, the Court will deny plaintiff's motion for summary judgment.  The Court will issue an appropriate order.


                                    s/ Mary L. Cooper
                            **MARY L. COOPER**
                            United States District Judge
Dated:      August 15, 2008